**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 11-01664 (CKK) |
| CHRISTOPHER MALLETT, | |
| Defendant. | |

**MEMORANDUM OPINION**
(October 13, 2011)

Plaintiff, the Federal Trade Commission (the "FTC") brings this civil action against

Defendant Christopher Mallett ("Mallett"), alleging that Mallett has engaged in deceptive

practices in the course of marketing debt-, tax-, and mortgage-relief services to consumers

through a series of websites.  Currently before the Court is the FTC's [2] Motion for a

Preliminary Injunction and Other Equitable Relief ("Motion for a Preliminary Injunction"),

which Mallett has failed to oppose.  Upon consideration of the FTC's uncontested submissions,

the relevant authorities, and the record as a whole, the Court shall GRANT the FTC's [2] Motion

for a Preliminary Injunction.[1]

**I.  BACKGROUND**

The FTC is an independent agency of the United States created by the Federal Trade

Commission Act (the "FTC Act"), 15 U.S.C. §§ 41-58.  Among other responsibilities, the FTC

enforces Section 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or

---

[1]  In an exercise of its discretion, the Court finds that the motion can and should be
decided "on the papers" and that hearing "live testimony" is unnecessary.  LCvR 65.1(d).

affecting commerce." *Id.* § 45(a)(1). Mallett is an individual residing in San Antonio, Texas,

though he has recently used addresses in both Texas and Tennessee. Decl. of Erin Feehan-

Nelson ("FTC Decl."), ECF No. [2-1], ¶ 15 & Attach. H at 144, 448.

Earlier this year, the FTC commenced an investigation into certain websites operated by

Mallett and others. *Id.* ¶ 2. During its investigation, the FTC learned that Mallett has registered

a number of websites over the past two years that he has used to advertise purported debt-, tax-,

and mortgage-relief services to consumers that are ultimately provided by third parties, a practice

commonly referred to as "lead generation." *Id.* ¶¶ 15-17 & Attachs. H-J. The websites are

accessible by residents of the District of Columbia and do not state that the advertised services

are unavailable to District of Columbia residents. *Id.* ¶¶ 3-12 & Attachs. A-F. Indeed, an FTC

investigator successfully accessed the websites from within the District of Columbia and used

them to communicate with a third-party service provider. *Id.* ¶¶ 1-12.

Mallett's websites comprise a loosely organized network. The websites often refer to one

another and Mallett has adopted a practice of cycling through websites, shutting down some

while opening others. *See, e.g.*, *id.* Attach. D at 80-81, Attach. H. at 145, 203-04, & Attach. E at

92-93. Many of the websites registered by Mallett are now inactive, including "gov-

usdebtreform.net," "usdebtcare.net," "worldlawdebt.org," "fha-homeloan.info," "us-

stopforeclosurenow.com," "usstopforeclosuretoday.com," "usstopforeclosure.com," "usbank-

loanmodification-gov.info," "mortgagehelp-gov.us," "loanmods-gov.info," "loanmods-gov.us,"

"mortgagehelp-gov.info," "debtconsolidation-gov.info," "debtrelief-gov.info," "creditcard-

assistance-gov.info," and "mycredithelp-gov.info." *Id.* Attach. H. at 145, 203-04.

One example of Mallett's websites is "gov-usdebtreform.net," which displayed a main

page entitled "Welcome to the Department of Consumer Services Protection Commission" and

included various links to putative services such as "Student Loan Relief," "Debt Relief Services,"

and "Tax Services." *Id.* Attach. B at 48.  Clicking on the displayed links opened new pages

advertising financial-related services, which would in turn direct visitors to advertised businesses

provided by third parties. *Id.* ¶ 3 & Attach. B at 50-78.  When an FTC investigator first visited

the website, the main page displayed an image of the FTC's official seal in the body of the page.

*Id.* ¶¶ 2-3 & Attach. A at 9.  Subsequently, the website was changed so that the FTC's official

seal was omitted from the body of the main page, but nonetheless appeared as the website's

"shortcut" or website icon located in the browser bar next to the website address. *Id.* ¶¶ 4-5 &

Attach. C at 79.  The "gov-usdebtreform.net" website also displayed an online "Debt Assistance

Request Form" and "Tax Assistance Request Form" that ostensibly could be submitted to receive

more information about those topics. *Id.* Attach. B at 48.  Using an alias, an FTC investigator

located in the District of Columbia submitted a request using the first of these forms and was

later contacted by a representative of Full Spectrum Debt Solutions, LLC, who offered to settle

and negotiate the investigator's credit card debt balances and offered to enroll the investigator in

the company's debt settlement program. *Id.* ¶¶ 19-20.

During its investigation, the FTC collected evidence showing that Mallett is personally

involved in the maintenance and operation of the network of websites.  Payment for registration

was frequently made by using Mallett's credit card and Mallett would periodically call his

internet service providers to address matters concerning the maintenance of the websites. *Id.*

Attach. H at 162, 304, 406-43.  One of Mallett's websites included an online "Debt Assistance

Request Form" that, when used, directed visitors to a "thank you" page displaying "cmallett" as

part of the website address. *Id.* ¶ 19 & Attach. K at 459.  In addition, an FTC investigator using

an alias placed four telephone calls to a toll free phone number listed on two of Mallett's

websites—specifically, "USDebtCare.net" and "WorldLawDebt.org"—and on each occasion the

investigator was directed to a voicemail account with the following outgoing message: "You

have reached the voicemail of Christopher Mallett [], senior financial consultant for World Law

Debt, Legal Advocate Financial Assistance branch." *Id.* ¶¶ 21-22 & Attach. L at 463-64.

     The FTC commenced this action on September 14, 2011, asserting seven causes of action

and claiming that Mallett has engaged in deceptive practices in the course of marketing debt-,

tax-, and mortgage-relief services to consumers through his websites. *See* Compl. for Permanent

Inj. & Other Equitable Relief ("Compl."), ECF No. [1].  On September 19, 2011, the FTC filed

the pending Motion for a Preliminary Injunction. *See* Pl.'s Mem. in Supp. of its Mot. for

Issuance of a Prelim. Inj., ECF No. [2].[2]  Subsequently, the FTC submitted proof of service

indicating that a copy of its Motion for a Preliminary Injunction, as well as a copy of the

Summons and Complaint, were served on Mallett by hand delivery in San Antonio, Texas, on

September 20, 2011. *See* Proof of Service, ECF No. [4], at 1.  Because this Court requires any

opposition to a motion for a preliminary injunction to be served and filed within seven days of

service of the motion, *see* LCvR 65.1(c), Mallett had until and including September 27, 2011, to

serve and file his opposition to the FTC's Motion for a Preliminary Injunction.  Mallett, however,

did not file a timely opposition.

     On September 30, 2011, three days after Mallett's time to respond to the FTC's Motion

for a Preliminary Injunction had expired, the FTC filed its reply. *See* Pl.'s Reply in Supp. of its

---

[2]  The FTC did not move for a temporary restraining order.

Mot. for a Prelim. Inj. & Other Equitable Relief, ECF No. [5].  That same day, noting Mallett's

failure to file an opposition, the Court ordered the FTC to show cause why "expedition" on its

motion was "essential," LCvR 65.1(d), if in fact the FTC was seeking an expedited hearing.  *See*

Order (Sept. 30, 2011), ECF No. [6].  On October 3, 2011, the FTC responded by "clarif[ying]

that it [was] not seeking an expedited hearing pursuant to Local Civil Rule 65.1(d)."  Pl.'s Resp.

to Order & Certificate of Service, ECF No. [7], at 1.

Even though Mallett executed a form confirming that he received a copy of the Court's

Order, *see* Acceptance of Service, ECF No. [7-1], he still did not file an opposition to the FTC's

Motion for a Preliminary Injunction or seek leave to file an opposition out-of-time.  Indeed, even

though a total of 23 days have elapsed since the FTC first served a copy of its motion on Mallett,

the public docket reflects that Mallett still has not filed an opposition or otherwise appeared in

this action.  Therefore, the Court considers the FTC's Motion for a Preliminary Injunction

without the benefit of an opposition.

## II.  LEGAL STANDARD

The FTC grounds its Motion for a Preliminary Injunction in Section 13(b) of the FTC

Act, the final proviso of which provides "[t]hat in proper cases the Commission may seek, and

after proper proof, the court may issue, a permanent injunction."  15 U.S.C. § 53(b).  Courts are

in agreement that the authority to grant permanent injunctive relief under this proviso includes

the authority to grant preliminary injunctive relief.  *See, e.g.*, *FTC v. World Travel Vacation

Brokers, Inc.*, 861 F.2d 1020, 1026 (7th Cir. 1988); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431,

1434 (11th Cir. 1984) (*per curiam*); *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir.

1982).

When presented with a motion for a preliminary injunction, courts in this Circuit

ordinarily apply a four-prong test, requiring the moving party to show (1) a substantial likelihood

of success on the merits, (2) that it would suffer irreparable injury if the injunctive relief were not

granted, (3) that an injunction would not substantially injure other interested parties, and (4) that

the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v.*

*England*, 454 F.3d 290, 297 (D.C. Cir. 2006). However, when the FTC seeks to enforce a matter

entrusted to it by Congress, it operates not as an "ordinary litigant," but as a "statutory guardian"

charged with safeguarding the public interest in enforcing federal law. *SEC v. Mgmt. Dynamics,*

*Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). In recognition of this special statutory role, the FTC

generally is not held to the same "high thresholds" that apply to private parties seeking

preliminary relief. *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1082 (D.C. Cir. 1981); *cf. FTC v.*

*Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1034 (D.C. Cir. 2008) ("Congress recognized the

traditional four-part equity standard for obtaining an injunction was not appropriate for the

implementation of a Federal statute by an independent regulatory agency.") (internal quotation

marks and citation omitted). Instead, when seeking a preliminary injunction under the final

proviso of Section 13(b), the FTC bears the lesser burden of satisfying a "public interest"

standard, requiring only a showing of (1) a likelihood of success on the merits and (2) a balance

of the equities at stake. *World Travel Vacation Brokers*, 861 F.2d at 1029; *accord FTC v. World*

*Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989); *FTC v. Ameridebt, Inc.*, 373 F. Supp. 2d

558, 563 (D. Md. 2005). In determining whether a preliminary injunction is appropriate, the

district court must "exercise independent judgment." *Weyerhaeuser*, 665 F.2d at 1082.

## III.  DISCUSSION

The Court's discussion here proceeds in four parts.  First, the Court shall address its jurisdiction to decide the FTC's Motion for a Preliminary Injunction.  *See infra* Part III.A. Second, the Court shall discuss the likelihood that the FTC will succeed on the merits.  *See infra* Part III.B.  Third, the Court shall weigh the public and private equities.  *See infra* Part III.C. Fourth, and finally, the Court shall define the appropriate scope of the preliminary injunction. *See infra* Part III.D.  The Court underscores that Mallett has failed to respond to the FTC's Motion for a Preliminary Injunction, depriving the Court of the benefit of an opposition and leaving the FTC's factual and legal showing uncontested.

### A.  The Court Has Jurisdiction to Decide the Motion

Because Mallett has failed to respond to the FTC's Motion for a Preliminary Injunction, the Court begins by explaining why it is satisfied that it has jurisdiction to decide the motion. Subject matter jurisdiction is a simple matter; the Court plainly has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1337(a), and 1345.  As for personal jurisdiction, the FTC has met its relatively light burden at this stage of the proceedings by establishing a *prima facie* case of personal jurisdiction.  *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005); *accord FTC v. Cleverlink Trading Ltd.*, 2006 WL 1735276, at *3 (N.D. Ill. June 19, 2006).  Where, as here, "the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process,"[3] "the requirement of 'minimum contacts' with a forum state is inapplicable" and instead "minimum contacts with the United States suffice."  *SEC v. Bilzerian*, 378 F.3d

---

[3]  Section 13(b) of the FTC Act provides that "[i]n any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found."  15 U.S.C. § 53(b).

1100, 1106 n.8 (D.C. Cir. 2004) (citation omitted), *cert. denied sub nom.*, *Haire v. Meshulam*,

544 U.S. 1017 (2005); *see also Bally Gaming, Inc. v. Kappos*, 2011 WL 2164117, at *4 (D.D.C.

June 3, 2011) ("[W]hen a Court derives its personal jurisdiction over a defendant from a federal

statute's nationwide-service-of-process provision, the Due Process Clause of the Fifth

Amendment does not require that the defendant also have minimum contacts with this district.").

Mallett, who resides in the United States and has actively solicited business in the United States,

has sufficient contacts to permit the exercise of personal jurisdiction over him in this case.  In the

absence of any countervailing showing or argument by Mallett, the Court finds that the FTC has

discharged its burden of establishing a *prima facie* case that this Court has jurisdiction to decide

its Motion for a Preliminary Injunction.[4]

　　　B.　　　*The FTC Has Shown a Likelihood of Success on the Merits*

In Count I of the Complaint, the FTC alleges that Mallett has violated Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a), by representing that "the websites or organizations he has operated

are agencies of the United States government, or affiliated or otherwise associated with, or

endorsed, sponsored, or approved by the United States government."  Compl. ¶ 42.  For the

reasons set forth below, the Court concludes that the FTC has demonstrated a sufficient

likelihood of success on the merits of this claim to support the issuance of the requested

---

[4] Under Section 13(b) of the FTC Act, the propriety of nationwide service of process is tied in part to the question of proper venue.  *See* 15 U.S.C. § 53(b) ("Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28.").  However, venue is non-jurisdictional and objections to venue may be waived.  *See Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 672-76 (D.C. Cir. 2001).  Because Mallett has failed to oppose the FTC's Motion for a Preliminary Injunction or otherwise raise an objection to the FTC's chosen forum, the Court shall assume, without deciding, that venue in this District is proper.

preliminary injunction.[5]

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). "To prove a deceptive act or practice in violation of Section 5(a) . . . , the FTC must show: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3) the representation, omission, or practice is material." *FTC v. Cantkier*, 767 F. Supp. 2d 147, 151 (D.D.C. 2011) (citations omitted); *accord FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006), *cert. denied*, 549 U.S. 1278 (2007). "The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably." *Verity Int'l*, 443 F.3d at 63 (citing *World Travel Vacation Brokers*, 861 F.2d at 1029). "A representation is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cantkier*, 767 F. Supp. 2d at 152 (quoting *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006)).

In this case, the FTC has made an uncontested showing that Mallett's websites falsely represent that the websites, and the organizations advertised on those websites, are associated with the federal government. Some of the websites have displayed official government insignia and other iconic images or language. A few examples will suffice. First, when an FTC

---

[5] Because the Court finds that the FTC has shown a likelihood of success on the merits of its first claim under Section 5(a) of the FTC Act, it need not address whether the FTC has also established a likelihood of success on the merits of its claims that Mallett has violated (1) the Telemarketing Sales Rule, 16 C.F.R. §§ 310.1-310.9, enacted pursuant to the FTC's authority under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, and (2) the Mortgage Assistance Relief Services Rule, 16 C.F.R. §§ 322.1-322.11, enacted pursuant to the FTC's authority under the 2009 Omnibus Appropriations Act, Pub. L. No. 111-8, § 626, 123 Stat. 524, 678 (2009), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, § 511, 123 Stat. 1734, 1763-64 (2009).

investigator first visited Mallett's website located at "gov-usdebtreform.net," the body of the

main page displayed an image of the FTC's official seal.  FTC Decl. ¶¶ 2-3 & Attach. A at 9.

Although the main page was subsequently changed to omit the seal from the body, the FTC's

official seal still appeared as the website's "shortcut" or website icon located in the browser bar

next to the website address.  *Id.* ¶¶ 4-5 & Attach. C at 79.  Mallett's website located at

"usdebtcare.net" similarly displayed the official FTC seal on its main page until the website was

rendered inactive.  *Id.* ¶ 7 & Attach. D at 81.  Second, the website located at "gov-

usdebtreform.net" touted an organization identified as the "Department of Consumer Services

Protection Commission," described as a "National consumer protection agency."  *Id.* Attach. B at

48.  It has also included language taken almost verbatim from the FTC's Bureau of Consumer

Protection website describing some of the FTC's responsibilities in protecting consumers.

*Compare id.* Attach. B at 48, *with id.* Attach. M at 466.  Finally, at least 34 of the websites

operated by Mallett convey an affiliation with the federal government through the use of "gov,"

"us," or shorthands for federal agencies in the website address, such as "gov-usdebtreform.net,"

"usdebtcare.net," "fha-homeloan.info," "us-stopforeclosurenow.com,"

"usstopforeclosuretoday.com," "usstopforeclosure.com," "usbank-loanmodification-gov.info,"

"mortgagehelp-gov.us," "loanmods-gov.info," "loanmods-gov.us," "mortgagehelp-gov.info,"

"debtconsolidation-gov.info," "debtrelief-gov.info," "creditcard-assistance-gov.info," and

"mycredithelp-gov.info."  *Id.* Attach. H. at 145, 203-04.

　　　　This uncontested showing suffices to discharge the FTC's burden to show a likelihood of

success on the merits of Count I of the Complaint.  The representations appearing on Mallett's

websites imbue the advertised services with the aura of legitimacy of the federal government

acting in its official capacity.  *See U.S. Ass'n of Credit Bureaus, Inc. v. FTC*, 299 F.2d 220, 222

(7th Cir. 1962) ("[P]etitioners' use of the name 'United States' in connection with the insignia

[mimicking official government insignia], directly or by implication represented that they were,

in some manner, connected with or are an agency of the United States Government"); *Bennett v.*

*FTC*, 200 F.2d 362, 337-38 (D.C. Cir. 1952) ("[P]etitioners' use of the combined words

'National', 'Service', and 'Bureau', with a Washington address, represents that petitioners are

connected with the United States government."); *In re Fleet*, 95 B.R. 319, 335 (Bankr. E.D. Pa.

1989) ("Defendants' use of the name, 'United States Consumer Council,' together with the

American eagle emblem, definitely had the 'capacity to mislead' consumers.").  Whether or not

the advertised debt-, tax-, and mortgage-relief services are "actually affiliated with the federal

government is 'information that [would be] important to consumers and, hence, likely to affect

their choice of, or conduct regarding' that service."  *Cantkier*, F. Supp. 2d at 158 (quoting

*Cyberspace.com LLC*, 453 F.3d at 1201) (notations in original).  The FTC has adduced sufficient

evidence to support a preliminary finding that representations of this kind would likely mislead

consumers acting reasonably under the circumstances.  Accordingly, the Court finds that the FTC

has demonstrated a sufficient likelihood of success on the merits of Count I of the Complaint to

support the issuance of the requested preliminary injunction.

The Court pauses to observe that its finding is merely preliminary; whether or not the

representations appearing on Mallett's websites were likely to mislead reasonable consumers is

ultimately a factual question that will require further development of the record.

> C. *The Equities Weigh in Favor of Issuing the Preliminary Injunction*

Where, as here, the FTC demonstrates a likelihood of success on the merits, the district court may "presume . . . that the public interest will be served by interim relief." *Weyerhaeuser*, 665 F.2d at 1082. Nonetheless, the court must "exercise independent judgment" and "take genuine account of 'the equities.'" *Id.* When balancing the equities, "the public interest should receive greater weight," *World Wide Factors*, 882 F.2d at 347 (citation omitted), and ordinarily "a countershowing of private equities alone [will] not suffice to justify denial of a preliminary injunction," *Weyerhaeuser*, 665 F.2d at 1083; *accord Whole Foods*, 548 F.3d at 1035.

The Court has no trouble concluding that the equities in this case weigh in favor of the issuance of the requested preliminary injunction. The public interest in ensuring the enforcement of federal consumer protection laws is strong, and Mallett's pattern of cycling through websites, shutting down some while opening others, evidences that similar conduct is reasonably likely to recur in the future. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999) ("[I]t is actually well-settled that an action for an injunction does not become moot . . . if there is a possibility of recurrence, since otherwise the defendant's [sic] would be free to return to their old ways.") (internal quotation marks and notations omitted; citation omitted). The issuance of a preliminary injunction will protect the public against misleading marketing practices relating to debt-, tax-, and mortgage-relief services. Meanwhile, due entirely to Mallett's failure to file an opposition to the FTC's Motion for a Preliminary Injunction, the record reveals no significant private interest counseling against the issuance of a preliminary injunction. Surely, requiring Mallett to comply with federal law cannot give rise to a cognizable burden, and the remainder of the requested relief is merely designed to ensure that relevant evidence is maintained for the

prosecution of this action and that Mallett's assets are not secreted away during the pendency of the case.  On this record, the Court simply has no basis to conclude that the private equities are so powerful as to override the countervailing public equities.  Accordingly, the Court finds that the equities weigh in favor of the issuance of the requested preliminary injunction.

> D.      *The Scope of the Preliminary Injunction*

Distilled to its essence, the preliminary injunction proposed by the FTC would (1) preliminarily restrain Mallett from making materially false or unsubstantiated representations in connection with the marketing of debt-, tax-, and mortgage-relief services to consumers, (2) require the removal of public access to any websites used by Mallett to advertise such services, (3) ensure the preservation of evidence relevant to the prosecution of this action, and (4) direct Mallett to provide an accounting of his present financial condition.  Courts in this District routinely find such relief appropriate in similar cases,[6] and the Court finds the relief proposed by the FTC to be appropriate here as well.  The FTC's proposal will ensure that the public interest in the enforcement of federal law is safeguarded, prevent consumer confusion, preserve pertinent evidence, and minimize the risk that assets that might be used to compensate consumers will be dissipated pending a final judgment.

However, the Court will depart from the FTC's proposal in two minor respects.  First, the FTC has proposed unreasonably tight deadlines for compliance for Mallett and third parties, including internet service providers hosting Mallett's websites.  The Court shall issue a

---

[6]  *See, e.g.*, *FTC v. Cantkier,* No. 1:09-cv-00894-BAH (D.D.C. May 15, 2009), ECF No. [4]; *FTC v. Ryan*, No. 1:09-cv00535-HHK (D.D.C. Mar. 30, 2009), ECF No. [4]; *FTC v. Global Web Solutions, Inc.*, No. 1:03-cv-02031-HHK (D.D.C. Oct. 3, 2003), ECF No. [5]; *FTC v. Mountain View Systems, Ltd.*, No. 1:03-cv-00021-RMC (D.D.C. Jan. 9, 2003), ECF No. [6].

preliminary injunction providing Mallett and third parties with a reasonable amount of time to

comply with the terms of the injunction.  Second, the FTC asks this Court to authorize it to

record any oral communications with Mallett or Mallett's employees, agents, or representatives

for the purpose of monitoring compliance with the preliminary injunction.  The Court shall only

authorize the FTC to record oral communications to the extent doing so complies with applicable

law.  If, for example, the FTC seeks to record a conversation in a jurisdiction that does not permit

"single party consent," and if the laws of that jurisdiction are in fact applicable to the FTC and

the FTC's conduct, then the Court expects the FTC to comply with any applicable law.  With

these two minor exceptions, the Court shall GRANT the FTC's [2] Motion for a Preliminary

Injunction and issue the preliminary injunction in the form proposed.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT the FTC's [2] Motion for a

Preliminary Injunction.  An appropriate Order and Preliminary Injunction accompanies this

Memorandum Opinion.


Date:   October 13, 2011

                                                  _____/s/_____
                                                  **COLLEEN KOLLAR-KOTELLY**
                                                  United States District Judge